GERARD BEEKMAN AND ANOTHER, AS TRUSTEES OF JAMES W. BEEKMAN, DECEASED, AND AS INDIVIDUALS, PLAINTIFFS, *v.* ABRAHAM VAN DOLSEN, DEFENDANT.

*Permissive waste — it involves negligence — a tenant for years — the measure of his duty.*

The trustees of an estate leased certain dock property to one Van Dolsen for a term of years, by a lease which provided that the lessee would, at the expiration of the term, surrender the premises in as good condition as reasonable use and wear would permit, damages by the elements excepted, and would not demand compensation for improvements made by him, but contained no covenant to repair. At the date of the lease, December 1, 1880, it was known by the parties thereto that under a claim of legislative authority the dock department of the city of New York contemplated a change of the bulk-head line, which would involve the partial destruction of the retaining wall, bulk-head and dock.

In December, 1880, the dock department undertook to make these changes, whereupon, on December 18, 1880, Van Dolsen applied to the United States Circuit Court and obtained against the city of New York and the members of the dock department an *ad interim* injunction restraining the performance of the work.

In an action brought against Van Dolsen, to recover, among other things, damages for permissive waste because of such partial destruction of the retaining wall, bulk-head and dock upon the leased premises,

*Held,* that he was not liable.

That before an action for permissive waste can be maintained against a tenant for years it must appear that he was negligent in permitting the waste.

That all that was required of Van Dolsen, in any view, was to be diligent to prevent dilapidation of the premises, and that by promptly proceeding in the United States Circuit Court he had discharged his duty.

EXCEPTIONS of the defendant Abraham Van Dolsen, directed to be heard in the first instance at General Term, the plaintiffs having recovered, by direction of the court, a verdict for $11,186.82, after a trial at the New York Circuit before the court and a jury.

*William Mitchell*, for the plaintiffs.

*Carlisle Norwood*, for the defendant.

PATTERSON, J.:

This cause is before us on exceptions ordered to be heard in the first instance at the General Term. There are four causes of action set forth in the complaint. At the trial the third was virtually withdrawn from consideration, but as to the others a verdict was directed in favor of the plaintiffs, and the amount of the verdict was arrived at after deducting a counter-claim admitted to be properly chargeable against the plaintiffs.

The first cause of action was for rent accrued under a lease. As we look at the record it is clear the defendant was liable for that rent. His covenant is plain. While it is true that two other instruments were executed contemporaneously (the difference of a day in their respective dates is not material, as it is perfectly clear they formed part of one transaction) with the lease, and we may consider them together, it is apparent that the defendant not only covenanted in form, but that he intended to be liable for the rent of the dock property, and that he understood and knew that he was to be a principal, and not an agent. Whatever caused his introduction to the matter, whether it was to find in him a plaintiff who could bring a suit in the United States Circuit Court or any other reason, when he did make his covenant he became bound by it and was directly liable to the lessors for the performance of all the terms and requirements of the lease incumbent upon the lessee, except so far as they may have been modified by the provisions of the other instruments; but nothing contained in those other instruments relieved him from the payment of rent.

The principal question involved in the discussion before us arises out of the second cause of action set forth in the complaint. The facts, so far as they are material, relating to it may be briefly stated. The premises in question, consisting of certain dock property on the East river front of the city of New York, between Forty-ninth and Fifty-first streets, were leased on the 1st day of December, 1880, by the plaintiffs, as trustees of the estate of James W. Beekman, deceased, to the defendant for a term of years, and that term was to

and did begin about twenty days before the date of the lease. One of its provisions was that the defendant " at the expiration of the said term will quit and surrender the premises hereby demised in as good state and condition as reasonable use and wear thereof will permit, damage by the elements excepted, without demanding compensation for any improvements on said premises made by said party of the second part." From the beginning of the term the premises were in the actual possession of third persons, who should, for all the purposes of this case, be considered as under-tenants of the defendant, and that is the most favorable aspect in which they can be regarded relatively to the plaintiffs. While the defendant was thus in possession of the *locus in quo,* by his sub-tenants occupancy, very serious damage was inflicted upon the property by the dock department of the city of New York. It consisted of the partial destruction of a retaining wall, bulk-head and dock. This act of aggression by the dock department followed very closely upon the execution of the lease, and the testimony before us leaves no doubt whatever that the intention of the commissioners of the dock department to commit what is called the waste to these premises was well known to the plaintiffs before the lease to the defendant was made ; and it is proven beyond the possibility of controversy that immediately the lease was executed and delivered, the defendant brought a suit in equity in the United States Circuit Court to restrain the action of the dock department, and that Mr. Justice Blatchford issued a temporary injunction restraining the commissioners from acting.

The theory upon which this second cause of action proceeds is ; that the demised premises being in the possession of the defendant, and he having covenanted to surrender them at the expiration of the term in as good condition as when he took possession, reasonable use and wear and tear and damages by the elements excepted, he is liable for the destruction of or detriment to the premises before alluded to, whether committed by himself or by others. In other words, it is sought to hold him liable for permissive or negligent waste, and it is claimed by the plaintiffs' counsel that adjudications of courts of authority in this State sustain the contention now made. We must consider the whole case on the terms of the lease between

the plaintiffs and the defendant. There is no covenant in that lease that the defendant shall make repairs, and the law will not imply one. It is not at all clear that a tenant for years is liable for permissive waste under any view of the law, although it seems to have been assumed by the courts of this State that such is the case (*Robinson* v. *Wheeler*, 25 N. Y., 252 ; *Austin* v. *Hudson R. R. R.*, Id., 334); but it has long been a contested question in the English courts, as is shown by the cases cited by Mr. Yool in his essay on Waste (p. 10). But we will assume that an action on the case against a tenant for years for permissive waste may be brought in this State with all the results that would flow therefrom, and yet we would not be justified in deciding that such an action may be maintained upon the facts of this present action. Waste, in its simplest definition, is whatever does a lasting damage to the freehold or inheritance. It is either voluntary or permissive, and the distinction is so clear that authorities need not be cited. Permissive waste implies negligence, which may consist either of acquiescence in or assent to the acts of strangers or failure to prevent such acts or to do that which is incumbent upon the party in possession as matter of good husbandry. But the very essence of liability for permissive waste must be negligence. In 1 Cruise's Digest (title 3, chap. 2, p. 129) it is said that permissive waste is a matter of omission only, and (at page 146) where the party in possession *suffers* a stranger to commit the injurious act he shall be charged with it, for it is presumed in law he may withstand it, and the law gives to every man his proper action, the lessor against the lessee and the latter his action against the trespasser who committed the waste. This was not originally so at common law, but was derived from the provisions of the Statutes of Marlbridge (52 Hen. 3, chap. 24); and Gloucester (6 Edw. 1, chap. 5).

But to constitute this particular kind of waste there must have been neglect, omission, sufferance or permission of the tenant. The presumption referred to is not conclusive. It may be rebutted by proof. The most ordinary kind of permissive waste is suffering buildings to fall into decay from neglect. If the defendant in an action brought under such circumstances should prove that he exercised all diligence and fully discharged his duty to his landlord, he would be relieved from liability. It has recently been held in this State that what constitutes waste is a question of fact for the

jury (*Eysaman* v. *Small,* 15 N. Y. Supp., 288); and it seems
to be assumed there that all that was required from the party in
possession was to be diligent to prevent dilapidation of the premises.
That appears to us to be the true measure of duty in cases of this
kind.   Nothing of affirmative wrong is alleged against the defendant.
He committed no act of waste, nor did he suffer any to be done by
want of diligence.   On the contrary, he interposed to prevent it and
did all that the most careful and prudent man could have done
under the circumstances to prevent damage being done to the
property.   A reference to a few dates and facts will demonstrate this.
The lease in question was executed on the 1st day of December 1880.
The term was for two years from the eleventh day of the preceding
November.   Long prior to that date proceedings had been taken by
the department of docks of the city of New York, under a
claim of legislative authority to do so, to change the water
front of the East river, including the premises in question.   They
were pending when this lease was made, and resulted in a contract on
the 4th of December, 1880, between the commissioners and one
Kinsley whereby the change referred to was to be operated.   The
commissioners undertook to execute the change alluded to, and then
the situation was such that the tenant in possession was bound to be
diligent in resisting the contemplated encroachment or trespass on
the demised premises.   That is exactly what he did.   On the 18th
day of December, 1880, he applied to Judge BLATCHFORD, of the
United States Circuit Court, and obtained an *ad interim* injunction
against the city of New York and the members of the board of dock
commissioners.   What more could he have done?   He invoked the
aid of the court to prevent the wrong, and that was all that could be
required of him.

Mr. Gibbons, in his treatise on Dilapidations, says, on the author-
ity of Coke: "It may be inferred that the tenant is liable only for
such acts of waste by a stranger as do not exceed a civil trespass,
and which he might have reasonably resisted." If he has done all
he could do to resist the acts of a department of a municipal govern-
ment, acting under actual or colorable authority of law, he has
striven to protect the property, and has neither permitted the tres-
pass nor negligently suffered it; and as the recourse against him
would only be in an action of trespass on the case, and the grava-

men of that action being either permission or negligence as applied to these facts, the plaintiff could not recover. The defendant was not in fault. There is not a case to be found in this State where the defendant was held liable for permissive or negligent waste when he resorted to all proper and lawful means to prevent a stranger or intruder from doing damage to the reversion, and we certainly will not extend the rule of liability in a case of this kind.

The learned judge in the court below directed the jury to find a general verdict for the plaintiff for $11,186.82, which was the result of a diminution of $12,586.82, less $1,400 on a counter-claim. As this balance was made up, we think the direction was erroneous, and that the exceptions should be sustained and a new trial ordered, with costs to abide the event.

O'BRIEN, J., concurred.

VAN BRUNT, P. J.:

I concur in this opinion so far as it relates to liability for waste, and in result arrived·at.

Exceptions sustained and new trial ordered, with costs to abide the event.