Stevens Voisin, Appellant, v. The Commercial Mutual Insurance Company, Respondent.

*Marine insurance — testimony as to the condition of a hull under water must be based on actual knowledge.*

Upon the trial of an action brought to recover damages alleged to have been sustained under a marine insurance policy, insuring the plaintiff upon merchandise laden on the bark *L. E. Cann*, "at and from Tecolutla, Mexico, to New York," it appeared that the bark left Cardiff in the fall of 1881 and arrived in Vera Cruz in the latter part of November, 1881; remained there until about January

28, 1882; sailed for Tecolutla and arrived there about January 30, 1882, and left Tecolutla on March 30, 1882, and was abandoned off the coast of South Carolina April 27, 1882.

Upon the trial, George W. Brown, an agent of the underwriters, testified that he never saw the vessel until she was lying at Norfolk, Va., on the 1st of June, 1882, and that he then found worm holes in the hull. The witness was allowed to testify that, from his knowledge of the presence of worms in tropical waters, from his experience in that regard at Vera Cruz and at Tecolutla, and from his examination of the hull at Norfolk, the vessel was not seaworthy as to her hull when she left Tecolutla, and that she was not seaworthy as to her hull on the 10th of March, 1882, that being the date upon which the policy in suit was issued. The captain of the bark testified that he had seen the bottom of the vessel only when she was on the ways at Cardiff, and that she was then slightly touched with worms. He was allowed to testify that, in his judgment, the vessel was not seaworthy as to her bottom when she left Tecolutla.

*Held,* that the opinion of neither witness was competent, because neither had sufficient knowledge of the condition of the vessel's bottom while at Tecolutla to justify the reception of the evidence.

APPEAL by the plaintiff, Stevens Voisin, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 29th day of December, 1894, upon the verdict of a jury rendered after a trial at the New York Circuit, and also from an order entered in said clerk's office on the 4th day of January, 1895, denying the plaintiff's motion for a new trial made upon the minutes.

*Frederic R. Coudert* and *William Mitchell,* for the appellant.

*Treadwell Cleveland* and *Henry W. Hardon,* for the respondent.

FOLLETT, J. :

This action was begun August 23, 1882, to recover the sum of $3,500, with interest thereon, from July 21, 1882, damages alleged to have been sustained under a valued, voyage, marine insurance policy, issued by the defendant March 10, 1882, whereby it insured "Stevens Voisin on account of whom it may concern," on merchandise valued at $29,500, laden on board the bark *L. E. Cann,* "at and from Tecolutla, Mexico, to New York." The bark left Tecolutla March 30, 1882, and was abandoned off the coast of South Carolina April 27, 1882, and the plaintiff's goods were lost. The defendant interposed four defenses : (1) That the vessel was unseaworthy ; (2) that plaintiff had not merchandise of the value or of

the description stated and represented on board, and that it was shipped with the intent that the vessel should never reach New York; (3) that the voyage was not prosecuted in good faith and was not abandoned by reason of the perils insured against; (4) deviation, in unnecessarily and unreasonably delaying the bark at Tecolutla. This case has been twice before this court (62 Hun, 4; 67 id. 365), and the trial under review is the third one.

On the first trial, as on the present, the issue was presented whether the bark was seaworthy when it sailed from Tecolutla. It was asserted then, as now, that the hull was in an unseaworthy condition, but no complaint was made of any other part. The defects alleged to exist in the hull were below the water line and caused by worms. On the first trial the plaintiff, to prove that the vessel was seaworthy, introduced the testimony taken *de bene esse,* of A. Randolph Tedford, the second mate of the vessel. He testified that he shipped as second mate at Cardiff, Wales, in September, 1881, made the voyage from that port to Vera Cruz, and served in that capacity until April 27, 1882, when the vessel was abandoned. The witness testified that at Vera Cruz he and the first mate went around the vessel in a boat several times and examined the hull, finding two places that looked as though they might leak, one where two planks came together, and another by the side of a treenail; that they caulked and plugged these places, and did not discover any other defect in the boat. On the first trial this witness was asked : " Q. What was the condition of the ship with respect to the staunchness of her hull and manning and general equipment ? " This was objected to by the defendant's counsel on the ground, among others, that the witness did not examine below the water line, and never examined her inside and out; that his statement as to the condition of the vessel was hearsay, and that he had no personal knowledge that would justify a conclusion. This objection was overruled and the testimony of the witness received. The further question was asked : " Q. Now, what was the condition of the *L. E. Cann* with respect to seaworthiness at the time you left Tecolutla ? " This question was objected to upon the same grounds, and the answer of the witness taken. Upon a review of that trial it was held (62 Hun, 4) that the reception of this evidence was error, on the ground that the witness had not sufficient knowledge of the condition of the ves-

sel to justify the reception of his opinion. It was held that the testimony of the witness disclosed that "he was not sufficiently acquainted with the condition of the ship, where she was liable to have been injured by the worms, to express his opinion or judgment. All that it was competent for him to do was to state what he had seen in the course of the observations made by him."

On the present trial George W. Brown, called by the plaintiff, testified that he was an agent of the underwriters; that he never saw the vessel until after the 1st of June, 1882, when she was lying at Norfolk, Va. On his direct examination he testified to the condition in which he found the vessel and its cargo. Upon his cross-examination by the defendant's counsel the following occurred: " Q. This vessel is stated to have left Cardiff in the fall of 1881, and to have arrived at Vera Cruz in the latter part of November, 1881, and to have laid there and at Tecolutla until the middle of March, 1882. You have stated that you found no copper or copper paint upon the vessel. State if in your judgment and from your observation of her at Norfolk, she was or was not seaworthy at the time she left Tecolutla? Mr. Goodrich: I object to that on the same grounds as heretofore, and as incompetent, irrelevant and immaterial, and as calling for the opinion of the witness. Q. I don't mean seaworthy as to her chronometer, nor provisions, nor spars, nor rigging, but as to her hull? [Same objection.] Mr. Cleveland: I will ask the question as to Tecolutla. A. The water at Tecolutla is bad; worms are so thick; what makes the worms thick in Tecolutla is that it is at the confluence or mouth of the river in what we call brackish water. That is one of the worst conditions for worms; water mixed or brackish water. I have had experience in the action of worms on wood at or near Tecolutla. I observed that in logs that have broken away from rafts, logs of mahogany and cedar, that have broken away from rafts, they have been wormed, and very bad after a short time, after drifting upon the bank up on the beach. Q. This vessel lay at or near Tecolutla from, say the 30th of January until the middle of March, what effect would the worms have on her bottom? A. They most decidedly would have eaten it. Q. Judging now from your experience with worms in tropical waters generally, and at Vera Cruz and Tecolutla, and judging from the facts that you saw

at Norfolk, was this vessel and the examination you made of her hull then — was she, in your judgment, seaworthy or unseaworthy as to her hull when she left Tecolutla? [Objected to as incompetent and calling for an opinion of the witness.] Q. Have you also had experience at Vera Cruz? A. Yes, sir. Q. This vessel is stated to have arrived at Vera Cruz in the latter part of November, 1881, to have there remained until about January 28th, 1882, when she sailed for Tecolutla ; she arrived at Tecolutla on or about January 30th, 1882, and left Tecolutla on or about the 21st day of March, 1882, judging from your experience generally — The Court : And assuming those facts to be true. Mr. Cleveland : Assuming those facts to be true, and judging from your experience generally of the action of worms on wood in tropical waters unprotected by copper or copper paint, wood such as you found the bottom of the *Cann* to be composed of, mainly spruce ; and judging also from the facts which you observed from your examination of the hull of the vessel at Norfolk, and what you saw there concerning the condition of the hull, was or was not the vessel in your judgment seaworthy as to her hull when she sailed from Tecolutla? [Objected to as incompetent and calling for the opinion of the witness.] Mr. Goodrich : I make the same objection as before, and the further objection that the hypothesis of that question is not sustained by the evidence. I also object to that question that they must confine their attention, so far as seaworthiness is concerned, to the 10th of March, when that policy had its inception, and unless this witness is enabled to give his opinion, founded upon the condition of the vessel at that time, which he clearly cannot do, his testimony is incompetent, and we object to any evidence of her unseaworthiness, except at Tecolutla. Her condition when she sailed from Tecolutla doesn't affect this case, except when it relates back. I read the answer that 'the vessel at the time of so leaving Tecolutla was not seaworthy nor duly manned or equipped.' The Court : I think I will allow that to be answered. [Exception.] A. I don't think that she was. The Court : Assuming these facts to be true, and judging from your experience generally of the action of worms on wood in tropical waters unprotected by copper or copper paint, wood such as you found at the bottom of the *Cann*, to be composed of, mainly spruce, and judging also from the facts

which you observed from your examination of the hull of the vessel at Norfolk, and what you saw there concerning the condition of the hull, was or was not the vessel seaworthy as to her hull on the 10th of March, 1892? [Same objection. Objection overruled. Exception.] A. No, sir. Mr. Goodrich: We have the same objection. The Court: Yes."

The second mate and George W. Brown were asked for an opinion based on the same undisputed facts, with a single exception about to be stated. In the case of the mate, who had personal knowledge of the facts, it was held that they were insufficient to justify an opinion as to the seaworthiness of the vessel at Tecolutla. In the case of Brown it was held that his opinion as to the condition of the hull of the vessel at Tecolutla was competent. The only additional fact relating to the condition of the hull testified to by the last witness was that he found worm holes in it at Norfolk in June, 1882. Whether these holes were eaten before or after the vessel left that port the witness did not assume to know.

Undisputed facts, which are insufficient upon which to found an opinion, do not become sufficient by being incorporated into a hypothetical question.

The defendant called William W. Brooks, the captain of the *L. E. Cann*, who testified that he received $6,500 for wrecking her, and it was sought to connect the plaintiff and the consignors of his goods with a conspiracy to have her cast away. The captain testified without apparent shame to his own infamy, stating the details of the corrupt bargain, the sums paid to him and when and how paid. On the present trial he was asked: " Q. In your judgment was she seaworthy when she left Tecolutla ? " He had testified that he had made no examination of her at Tecolutla or at Vera Cruz. This question was objected to as incompetent, irrelevant and immaterial, and also that it appeared that he had not examined the vessel. These objections were overruled and the witness answered: " I can only speak of the condition of her hull from what I suppose it would be from being down in the hot weather five months with no copper on her considering her wormy condition at Cardiff. She was slightly touched with worms at Cardiff. The Court: I think I will let this stand ; I will let the answer be read. [Exception.] A. As far as her bottom was concerned, no, sir."

Thus this witness was allowed to give his opinion of the seaworthiness of the vessel in respect to its bottom, the only defect claimed, founded on less knowledge than the excluded opinion of the mate, except that he saw her bottom at Cardiff, after which he sailed for Vera Cruz, without, so far as it appears, making any repairs to the bottom or even painting it. He testified that when at Cardiff she was on the ways about eight hours; that he examined her bottom; that it was bare of paint; that she had no metal, and along the edge of the seams and along the bottom it was touched with worms. So far as it appears this vessel had never been in southern waters before her voyage from Cardiff to Vera Cruz. The answer of this witness was not based upon a hypothetical question, and under the rule laid down in 62 Hun, which is the law of this case, his opinion was clearly founded on insufficient knowledge of the condition of the bottom of this vessel when she lay at Tecolutla. Following the decision of this court before cited, we are compelled to hold that the court erred in receiving the opinions of these witnesses as to the seaworthiness of the vessel at the port of Tecolutla.

In view of the conclusion to which we have already come on the questions hereinbefore discussed, it is not necessary to consider the other questions raised.

The judgment and order must be reversed and a new trial granted, with costs to the appellant to abide the event.

Van Brunt, P. J., and Parker, J., concurred.

Judgment and order reversed, new trial granted, costs to appellant to abide event.